UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

IAN FREEMAN, individually and as the representative of a class of similarly situated persons,

Plaintiff,

vs.

ZILLOW, INC., a Washington corporation, and DOES 1-50, inclusive,

Defendants.

CASE NO. 8:14-cv-01843-JLS-DFM

**ORDER CONDITIONALLY GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CLASS NOTICE (Doc. 122)**

Before the Court is Plaintiff Ian Freeman's unopposed Motion for Preliminary Approval of a Class Action Settlement and Approval of Class Notice. (Mot., Doc. 122.) Freeman asks the Court to (1) preliminarily approve the terms of the class action settlement; (2) certify the proposed class and collective action for settlement purposes only; (3) approve Garden City Group, LLC as the settlement administrator; (4) authorize the mailing of the proposed class notice; (5) appoint Mark J. Geragos of Geragos & Geragos, APC and Bobby Samini of Samini Scheinberg, PC as Class Counsel; (6) appoint Freeman as Class Representative; and (7) schedule a final fairness hearing. (*See id.*) The Court twice requested supplementary briefing—once before and once after oral argument on the Motion. (*See* Request Suppl. Briefing, Doc. 126; Second Request Suppl. Briefing, Doc. 133.) Having considered the papers, heard oral argument, and taken the matter under submission, the Court conditionally GRANTS Freeman's Motion.

## I. BACKGROUND

In this wage-and-hour class action, Freeman alleges that Zillow, an online home and real estate marketplace, engaged in a "systematic scheme of exploiting and intimidating its employees" to skip meal and rest breaks and work overtime without compensation. (SAC ¶ 1, Doc. 45.) In his Second Amended Complaint, Freeman advances claims for (1) failure to pay wages (Cal. Labor Code §§ 1194, 1194.2), (2) failure to pay overtime wages (Cal. Labor Code § 510), (3) failure to provide meal and rest breaks (Cal. Labor Code § 226.7), (4) waiting time penalties (Cal. Labor Code § 203), (5) failure to provide accurate wage statements (Cal. Labor Code §§ 226(a), (e)), (6) unfair business practices under the Unfair Competition Law (Cal. Bus. Prof. Code § 17200, *et. seq.*), (7) willful violations of the Fair Labor Standards Act (29 U.S.C. § 201, *et. seq.*), and (8) violations of the Fair Labor Standards Act (29 U.S.C. § 201, *et. seq.*). (SAC ¶¶ 55-110.)

On February 6, 2016, the Court granted Plaintiff's Motion for Class Certification. *See generally Freeman v. Zillow, Inc.*, No. SACV 14-1843-JLS-DFMX, 2016 WL

6080208 (C.D. Cal. Feb. 26, 2016). While granting class certification, the Court narrowed the proposed class definition to:

> Class: Current and former non-exempt hourly employees who are or were employed by Zillow, Inc. in California as an Inside Sales Consultant, who worked a shift scheduled between 8:00 a.m. and 4:00 p.m. during the period November 19, 2010 through January 4, 2015 and who did not execute a Separation and Release of Claim Agreement after ending their employment.

> Subclass: Former non-exempt hourly employees who were employed by Zillow, Inc. in California as an Inside Sales Consultant, who worked a shift scheduled between 8:00 a.m. and 4:00 p.m. during the period November 19, 2010 through January 4, 2015 and who did not execute a Separation and Release of Claim Agreement after ending their employment.

*Id.* at *7.

After the Court granted class certification, Zillow filed a motion for partial summary judgment and decertification of the class. (Mot. Summary Judgment, Doc. 79; Mot. Decert. Class, Doc. 81.) One month later, on May 6, 2016, the parties apprised the Court that they had reached a proposed class action settlement agreement. (Notice, Doc. 97.) After the parties spent several months ironing out the details of the agreement and obtaining approval from the Department of Labor, Freeman filed this Motion for Preliminary Approval on December 2, 2016. (Mot.; *see* Stip. Order, Doc. 106; Stip. Order, Doc. 108; Stip. Order, Doc. 110; Decl., Doc. 113.)

The Settlement Agreement provides for a gross settlement fund of 6 million dollars. (*Id.* § 5.1) The gross settlement fund shall be reduced by a *pro rata* amount for each class member who opts out of the Settlement Agreement, but any amount not awarded in

attorneys' fees or as an incentive award will not revert to Zillow. (*Id.* §§ 2.8, 5.1.1., 5.1.2, 5.1.3, 7.1.12.) After deducting administrative costs, penalties, attorneys' fees, and any incentive award, the net settlement amount will be apportioned to class members based on five main and three minor allocations. (*Id.* § 5.1.1.) The first allocation awards class members (1) one-half times their regular rate of pay (2) multiplied by an assumed 6.29 hours per workweek (3) multiplied by two for every week class members worked for Zillow from March 1, 2013 through February 28, 2015. (*Id.* § 5.1.1(a).) To recognize the longer statute of limitations that California class members enjoy for their state law overtime claims, the second allocation provides California class members one-half times their regular rate of pay multiplied by an assumed 6.29 hours per workweek (plus interest) for every week California class members worked from November 19, 2010 through February 28, 2013. (*Id.* § 5.1.1(b); Mem. at 12-13.) The third and fourth allocations award California and Washington class members one-half times an assumed two hours per workweek (plus interest) for any weeks class members worked from March 1, 2015 through February 29, 2016. (SA § 5.1.1(c), (d).) These allocations are intended to compensate class members "to the extent that they may allege that they nevertheless underreported their overtime" in the new timekeeping system. (Mem. at 12.) To compensate California class members for their meal and rest break claims, the fifth allocation awards California class members their average rate of pay multiplied by an assumed one hour per workweek for every week they worked from November 19, 2010 through February 29, 2016. (SA § 5.1.1(e).) The three minor allocations reserve $30,000 for California class members' inaccurate itemized wage statement claims (apportioned on a *pro rata* basis among California class members), $25,000 for California class members' waiting time claims (apportioned on a *pro rata* basis among California class members), and $80,000 for class members who worked for Zillow between March 1, 2016 and the date of preliminary approval (apportioned on a weighted basis based on the number of weeks worked). (*Id.* §§ 5.1.1(f), (g).) To the extent that the aforementioned allocations

exceed or do not exhaust the net settlement fund, a multiplier will be applied to the allocations other than the first overtime allocation to ensure that the net settlement fund equals the allocations. (*Id.* §§ 5.1.1(h).)

On January 20, 2017, the Court requested supplemental briefing on several potential concerns with the settlement. (Suppl. Briefing Order, Doc. 126.) First, the Court questioned whether Freeman was a typical and adequate representative for any overtime claims after the implementation of the new timekeeping system, Workday. (*Id.* at 1-2.) Second, Freeman had not explained why the parties had chosen February 28, 2015 as the end for the first overtime allocation, as opposed to January 4, 2015, the date adopted in the Class Certification Order. (*Id.* at 2.) Third, the Court questioned whether the release "appropriately 'track[s] the claims asserted in this case." (*Id.* at 2-3 (quoting *Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2016 WL 4073336, at *10 (N.D. Cal. Aug. 1, 2016).) Not only was the release broad but it encompassed any Washington class members' claims for time worked between November 19, 2010 and February 28, 2013, even though they would not be receiving compensation for this period. (*Id.* at 2-3 & n.2.) Fourth, Freeman had not identified what purpose was served by requiring class members to write the entire case number and exact dates of their employment to opt out of the Settlement Agreement. (*Id.* at 3.) Fifth, Freeman had not supplied a declaration from the proposed claims administrator, Garden City Group, LLC. (*Id.* at 3-4.)

Through two rounds of supplemental briefing and an Amendment to the Settlement Agreement, Freeman has largely alleviated the Court's concerns. In the Settlement Amendment, the release was narrowed by replacing the word "including" with "namely." (SA Amend. § 8.1, Doc. 135-6.) By redefining the terms "class" and "class period," the Settlement Amendment ensures that Washington class members will not be waiving any claims for time worked before March 1, 2013. (*Id.* § 2.2.) The revised class notice drops the requirement that class members must provide the full case number and exact dates of their employment to opt out of the Settlement Agreement. (*See* Revised Notice, Exh. 2,

Doc. 135-6.) In addition, Freeman now has explained that the parties selected February 28, 2013 as the cutoff date for the first overtime allocation to reflect "class members' transition to the new timekeeping system." (Mem. at 12 (citation omitted).) Plaintiff's Counsel have also provided a declaration demonstrating the capabilities of the proposed Claims Administrator. (*See* Kierkegaard Decl., Doc. 128-2.)

Most importantly, in his Second Supplemental Brief, Plaintiff's Counsel have explained that they conducted extensive discovery about potential post-Workday implementation overtime claims and that Freeman is an adequate and typical representative for the entire proposed class. (Second Suppl. Briefing Mem. at 1-5.) Plaintiff's Counsel maintain that they have gathered sufficient information about post-Workday implementation overtime claims by reviewing more than 19,000 pages of documents from this period, simultaneously representing another employee who continued working for Zillow after Zillow implemented Workday, examining the average number of overtime hours submitted in Workday, and deposing Zillow executives. (*Id.*) Freeman further contends that there are no intraclass conflicts because the difference in compensation between the pre- and post-Workday implementation allocations "'is tied to the extent of damages incurred' by [class members] before and after Workday's implementation . . . ." (*Id.* at 8.) "[T]hat it is possible to draw a line between categories of class members[,]" the Ninth Circuit has observed, "does not necessarily require separate representation for each category." *Shaffer v. Cont'l Cas. Co.*, 362 F. App'x 627, 630-31 (9th Cir. 2010). Here, considering the objective evidence supporting the estimated two hours of overtime per workweek for post-Workday implementation workweeks (*see* Geragos Second Suppl. Decl. ¶¶ 4-15, Boehler Decl ¶¶ 4-5, Exh. 1, Doc. 135-1; Anderson Report, Exh. 2, Doc. 135-2; Connor Decl. ¶¶ 9-10, Exh. 3, Doc. 135-3), the Court now agrees with Freeman that "the differences between class members would not affect the adequacy of representation." *Id.* at 631; *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009) (observing that the differences in the plan of allocation did

not require the creation of subclasses because they "simply . . . reflect[] . . . the extent of the injury that certain class members incurred and do[] not clearly suggest that the class members had antagonistic interests").

After the Stipulated Amendment, the Settlement Agreement defines the class as:

> [A]nyone who has been employed by Zillow, Inc. as an Inside Sales Consultant, Senior Inside Sales Consultant, Business Consultant, Business Consultant I, Business Consultant II, Senior Business Consultant I, Sales Executive I, Sales Executive II, Account Manager (Travel Team), Account Manager (In Market Sales), Sales Coordinator, Sales Event Coordinator, In-Market Sales Executive, Senior In-Market Sales Executive, Senior In-Market Sales Executive, and Team Lead, in (a) the State of California from November 19, 2010 through the date on which the Court may grant preliminary approval ("California Class Members") or (b) the State of Washington from March 1, 2013 through the date on which the Court may grant preliminary approval ("Washington Class Members").

(SA Amend. § 2.1.) The class does not include those who opt out or Rachel Kremer, Jennifer Young, Ashley Boehler, James Friedrich, Reginald Peterson, Stephen Johnson, Michael Kerr, Ryan Seda, or Jason Youseph. (*Id.*)

In return for receiving a share of the settlement, class members will release Zillow (and related persons and entities) from:

> [A]ny and all claims, rights, penalties, demands, damages, debts, accounts, duties, costs (other than those costs required to be paid pursuant to this Settlement Agreement), liens, charges, complaints, causes of action, obligations, or liability of any and every kind, whether known or Unknown Claims, that were alleged or could have been asserted based on the alleged facts in the Litigation and any claims relating in any way to the facts alleged

or asserted or referred to in any of the pleadings and/or papers filed in the Litigation, namely:

(*Id.* § 8.1.) Following "namely," the release provides a list of case documents, statutes, orders, and legal theories under which class members agree to waive their claims. (*See id.*) Separately, Freeman agrees to waive any individual claim "arising out of or related to any act, omission, event, fact or other thing related to, or arising from his employment and/or severance of employment with Zillow . . . ." (*Id.* § 8.5.) The "Class Period" is defined as "the period of time from (a) November 19, 2010, up through and including the date the Court grants preliminary approval, for California Class Members and (b) March 1, 2013, up through and including the date the Court grants preliminary approval, for Washington Class Members, which is the period of time applicable to the claims being released pursuant to Section 8 hereafter." (*Id.* § 2.2.)

The Settlement Agreement also details how notice will be provided to class members. Within ten days of preliminary approval, Zillow will provide the Claims Administrator with potential class members' names, social security numbers, last known mailing addresses, and dates of employment. (*Id.* § 6.1.) The Claims Administrator will check the addresses provided against those in the National Change of Address Database. (*Id.* § 6.3.) Within ten days of receiving the class list, the Claims Administrator will mail the class notice via first-class mail to class members. (*Id.* § 6.2.) If the class notice is returned as undeliverable with a forwarding address, the notice shall be mailed immediately to that address. (*Id.* § 6.3.) If no forwarding address is provided, the Claims Administrator will use the class member's name, address, and social security number to attempt to find an alternative address for the class member through a "skip-trace." (*Id.*) Class members have 30 days from the mailing of the class notices to opt out of the class. (*Id.* § 7.2.1.)

Class members will receive a settlement check dedicated to their share of the first allotment and a separate check for any amount due under the other allotments. (SA §

7.1.9.) With their settlement checks, class members will also receive a DOL Form WH-58, which includes FLSA opt-in and release language. (*Id.* § 7.2.3.) Besides this DOL form, the settlement checks will state: "I have received and read the Class Notice in *Freeman v. Zillow, Inc.* By negotiating this check, I consent to join the FLSA collective action, elect to participate in the Settlement, and agree to release my clams covered by the Settlement." (*Id.*) By cashing or negotiating the settlement checks, class members shall be deemed to have opted into the FLSA collective action. (*Id.*)

## II. <u>CONDITIONAL CERTIFICATION OF THE CLASS AND COLLECTIVE ACTION</u>

On February 26, 2016, the Court certified an overtime and meal and rest break class in this case. *See generally Freeman*, 2016 WL 6080208. Because the parties seek to expand the class for purposes of settlement, the Court must examine the propriety of class certification once more. The Court incorporates its analysis from the Class Certification Order and examines Rule 23's requirements only to the extent that the parties seek to certify a broader settlement class.

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Rule 23(a) "requires a party seeking class certification to satisfy four requirements: numerosity, commonality, typicality, and adequacy of representation." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)). Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 350-51.

Besides satisfying Rule 23(a)'s requirements, the proposed class must fall within one of Rule 23(b)'s three permitted types of classes. *Id*. at 345. Here, Freeman seeks certification of the class under Rule 23(b)(3), which permits maintenance of a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When examining a class that seeks certification under Rule 23(b)(3), a court should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id*.

### A. The Proposed Class Satisfies the Rule 23(a) Requirements

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In its Class Certification Order, the Court already concluded that "joinder of all current and former ISCs in a single case would be impracticable." *Freeman*, 2016 WL 6080208, at *3 (citing Kremer Decl. ¶ 3, Doc. 52-2; Boehler Decl. ¶ 3, Doc. 52-3). Accordingly, the proposed class plainly satisfied Rule 23(a)'s numerosity requirement.

#### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 349-50 (citation and internal quotation marks omitted). The plaintiff must allege that the class's injuries "depend upon a common contention" that is "capable of classwide resolution." *Id.* at 350. In other words, the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (citation omitted).

Here, as the Court noted in certifying the class, the class's claims center on alleged policies or practices at Zillow that resulted in class members forgoing overtime as well as meal and rest periods. *Freeman*, 2016 WL 6080208, at *3. Specifically, Freeman alleges that Zillow used a timekeeping system that auto-populated an eight-hour workday and dissuaded employees from correcting their entries to reflect their additional hours worked. (SAC ¶¶ 22-23, 33-34.) Zillow also allegedly pressured employees to work overtime and skip meal and rest breaks through unreasonably high sales quotas, 210 minutes of mandatory talk time, "blitzes" and "waves" where employees were required to make calls

without breaks for several hours, and shifts that did not end until employees met sales goals. (*Id.* ¶¶ 35-39, 43-48.) Questions such as whether Zillow used a deficient timekeeping system, pressured class members to work overtime without compensation and skip meal and rest periods, provided accurate wage statements, and timely paid wages are common to all class members and can be answered by examining policies and practices applied uniformly. Freeman has therefore satisfied the commonality requirement.

**3. Typicality**

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "[T]ypicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought . . . ." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). As to the representative, "[t]ypicality requires that the named plaintiffs be members of the class they represent." *Id.* (citing *Gen. Tech. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). The commonality, typicality, and adequacy-of-representation requirements "tend to merge" with each other. *Dukes*, 564 U.S. at 349 n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13).

In this case, Freeman's claims are sufficiently typical of the class's claims to support certification. As the Court noted in its First Request for Supplementary Briefing, Freeman's claims are most clearly typical of class members' claims before Zillow implemented Workday because the most obvious reason why class members did not receive overtime was Zillow's allegedly deficient timekeeping system. (Request Suppl. Briefing at 1-2.) But Freeman's Second Amended Complaint alleges that he, like other class members, was coerced into working unreported overtime through Zillow's "'boiler-room' atmosphere." (SAC ¶¶ 35-36, 38-39, 45-49.) Thus, to the extent that class

members could allege that underreporting continued after Zillow implemented Workday, the "nature of the[se] claims" is sufficiently similar to Freeman's experience for him to represent the entire class. *Hanon*, 976 F.2d at 508.

**4. Adequacy**

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

As noted earlier, the Court finds that Freeman's interests are sufficiently aligned with those of the entire class for Freemen to be an adequate class representative. While class members will receive less for post-Workday claims, this difference is amply supported by the much greater probability that class members were not fully compensated—and accordingly suffered greater potential damages—prior to the implementation of this new timekeeping system. Freeman has an interest in ensuring that class members receive fair compensation for unpaid overtime resulting from the "boiler-room" atmosphere at Zillow as well because he allegedly was subjected to these policies and practices. (SAC ¶¶ 35-36.) Plaintiff's Counsel have conducted extensive discovery of Zillow's overtime, meal, and rest break practices after it implemented Workday, which reveals that Zillow's allegedly deficient compensation practices eased after Zillow implemented Workday. (*See* Geragos Second Suppl. Decl. ¶¶ 4-15, Boehler Decl ¶¶ 4-5, Exh. 1; Anderson Report, Exh. 2; Connor Decl. ¶¶ 9-10, Exh. 3.) Considering this objective evidence, "the differences in the plan of allocation d[o] not require the creation of subclasses" because they "simply . . . reflect[] . . . the extent of the injury that certain class members incurred and do[] not clearly suggest that the class members had

antagonistic interests." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 272 (3d Cir. 2009); *see Shaffer v. Cont'l Cas. Co.*, 362 F. App'x 627, 630-31 (9th Cir. 2010).

As to the adequacy of Freeman's counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Here, Freeman asks that the Court appoint Mark J. Geragos of Geragos & Geragos, APC and Bobby Samini of Samini Scheinberg, PC as Class Counsel in this action. (*See* Mot. at 1.) Both Geragos and Samini have provided declarations describing their experience litigating complex civil cases, including numerous class actions. (Geragos Decl. ¶¶ 1-11, Doc. 52-8; Samini Decl. ¶¶ 1–4, Doc. 52-9.) Based on this experience, Geragos and Samini seem to understand the applicable law as well as the strengths and weaknesses of class members' claims. These attorneys have already dedicated considerable resources to this action and earned favorable results for the class—most notably, obtaining a hard-fought certification of the earlier proposed class. Based on the experience and work of Freeman's proposed Class Counsel, the Court concludes that they have satisfied the adequacy requirement. The Court, therefore, appoints Mark J. Geragos of Geragos & Geragos, APC and Bobby Samini of Samini Scheinberg, PC as Class Counsel in this action.

**B. <u>The Proposed Class Satisfies the Rule 23(b) Requirements</u>**

Freeman seeks certification under Rule 23(b)(3). (Mem. at 16.) For the reasons set forth below, the Court finds that Freeman's proposed class satisfies both the predominance and superiority requirements.

**1. Predominance**

"[T]he predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether the proposed

class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 964 (9th Cir. 2013) (citations omitted). "Rule 23(b)(3) requires [only] a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* (alterations in original). Here, as discussed above, class members' claims depend on whether Zillow employed common policies or practices that caused class members to not receive overtime pay and forgo meal and rest periods. These common questions will predominate in this action.

**2. Superiority**

The Court further finds that a class action would be a superior method of adjudicating class members' claims. "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.*

Here, requiring each member of the proposed class to pursue their claims individually would burden the judicial system and contravene the efficiency and judicial economy goals animating Rule 23. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."). Further, litigation costs would likely exceed potential recovery if each class member litigated individually. "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted).

Considering the non-exclusive factors provided under Rule 23(b)(3)(A)-(D), the Court finds that class members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing the class action

do not outweigh the desirability of concentrating this matter in one proceeding. *See* Fed. R. Civ. P. 23(b)(3)(A), (C), (D). Therefore, the Court finds that the proposed Class may be certified under Rule 23(b)(3).

**C. Rule 23(g) – Appointment of Class Counsel**

Under Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). As previously stated in this Order, Geragos and Samini have effectively represented the class's interests so far and shall be appointed as Class Counsel in this case.

**D. Opt-In FLSA Collective Action**

The Fair Labor Standards Act permits an employee to bring an action "for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). By satisfying the "slightly different, but more stringent requirements for class certification," Freeman has met his burden for certifying an FLSA collective action as well. *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST RZX, 2011 WL 320998, at *4 (C.D. Cal. Jan. 27, 2011) (Staton, J.); *see Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1003 (N.D. Cal. 2010) ("Courts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3).").

To join a collective action, employees must provide consent in writing and "such consent [must be] filed in the court in which such action is brought." *Id.* While most courts have found that collective and class action claims can be brought in the same proceeding, *see Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 471-73 (E.D. Cal. 2010), a Rule 23 class action settlement cannot be used to undermine the FLSA's opt in requirement. Thus, a settlement agreement cannot make opting into an FLSA collective action a condition for recovery on non-FLSA claims. *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 602 (E.D. Cal. 2015). This Settlement Agreement, as drafted, is problematic in that regard. Under the Settlement Agreement, class members will receive

one settlement check dedicated to class members' first allotment and a separate check for any amount due under the other allotments. (SA § 7.1.9.) By negotiating or otherwise cashing *either* settlement check, class members are deemed to consent to join the collective action and release their FLSA claims.[1] (*Id.* § 8.4.) California class members, therefore, have to forgo recovery under the Settlement Agreement for meal and rest break violations, waiting time penalties, inaccurate wage statements, and PAGA penalties if they wish not to opt into the FLSA collective action. The Court cannot sanction this tying of payment for class action claims to joining a collective action. *See Millan*, 310 F.R.D. at 602.

But there are several rather simple ways to remedy this deficiency. Most obviously, the Settlement Agreement can be amended so that California class members receive a separate check dedicated exclusively to their allotments for meal and rest break violations, waiting time penalties, inaccurate wage statements, and PAGA penalties. The release language must also be modified so that class members must negotiate an overtime settlement check to opt into the FLSA collective action. Assuming that the parties are willing to stipulate to this modification, the Court preliminarily certifies an FLSA collective action as well as a Rule 23 opt-out class.

Having found that the proposed settlement class otherwise satisfies the requirements for a Rule 23(b)(3) class action and a FLSA collective action, the Court conditionally certifies the class and collective action for purposes of settlement only, provided that the parties submit an amendment to the Settlement Agreement and class notice that remedies this deficiency.

---

[1] Courts have concluded that employees can opt into an FLSA collective action settlement by negotiating a check if the check includes clear language indicating that, by negotiating the check, class members will be opting into the collective action and releasing their FLSA claims. *See Flores v. Alameda Cty. Indus. Inc*, No. 14-CV-03011-JD, 2015 WL 3763605, at *2 (N.D. Cal. June 16, 2015); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 4076620, at *3 (N.D. Cal. July 2, 2015).

## III. PRELIMINARY APPROVAL OF CLASS SETTLEMENT

To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). Review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing. Federal Judicial Center, *Manual for Complex Litigation*, § 21.632 (4th ed. 2004).

"To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). "'It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness,' and 'the settlement must stand or fall in its entirety.'" *Staton*, 327 F.3d at 960 (quoting *Hanlon*, 150 F.3d at 1026) (alterations omitted).

Besides these factors, where "a settlement agreement is negotiated *prior* to formal class certification," the Court must also satisfy itself that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (citation omitted). Accordingly, the Court must look for explicit collusion and "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at

947. Such signs include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (citations omitted).

At this preliminary stage and because class members will receive an opportunity to be heard on the Settlement Agreement, "a full fairness analysis is unnecessary . . . ." *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 665 (E.D. Cal. 2008). Instead, preliminary approval and notice of the settlement terms to the proposed Class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of *possible* approval . . . ." *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted) (emphasis added); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original).

### A. <u>**Strength of Plaintiff's Case**</u>

The principal claims at issue involve Zillow's alleged failure to pay Inside Sales Consultants overtime and provide California class members with meal and rest breaks. Plaintiff's evidence that Zillow's earlier timekeeping system resulted in extensive overtime violations is rather strong, *see Freeman*, 2016 WL 6080208, at *4, while there is little evidence that these failures continued after Zillow implemented Workday (*see* Geragos Second Suppl. Decl. ¶¶ 4-15, Boehler Decl ¶¶ 4-5, Exh. 1; Anderson Report, Exh. 2; Connor Decl. ¶¶ 9-10, Exh. 3). Zillow fiercely contested its liability—particularly on the meal and rest break and PAGA claims—and filed a motion for partial summary judgment.

(*See generally* Mem. Summary Judgment, Doc. 80.) In opposition to class certification, Zillow also submitted declarations from several employees asserting that they were not pressured to miss their meal and rest breaks. *See Freeman*, 2016 WL 6080208, at *4. The strength of class members' overtime claims are clearly reflected in the substantial monetary payout class members stand to receive under the Settlement Agreement. (*See* Geragos Suppl. Decl. ¶¶ 5, 8-10.) California class members faced greater obstacles in proving their state law meal and rest break claims, and this settlement allows class members to avoid the costs of a trial and lengthy appeals process. Thus, while class members have strong pre-Workday implementation overtime claims, the time and expense attendant with continuing to prosecute this suit weigh in favor of granting preliminary approval.

**B. Risk, Complexity, and Likely Duration of Further Litigation**

Freeman predicts that continued litigation would be costly, time consuming, and uncertain. (Mem. at 18-19.) The Ninth Circuit granted Zillow's petition for interlocutory review of the Court's certification of Plaintiff's meal and rest break claims, and Zillow filed a motion for decertification of the class and partial summary judgment. Assuming Freeman prevails on both fronts, class members would still have to succeed at trial and on appeal. Settlement eliminates the risks inherent in certifying a class, prevailing at trial, and withstanding any subsequent appeals, and it may provide the best opportunity for class members to obtain relief. This factor, therefore, weighs in favor of granting preliminary approval. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." (citation omitted)).

**C. Risk of Maintaining Class Certification**

Because the Court has already granted Freeman's earlier motion for class certification, the risk of maintaining class certification is less than in some putative class

actions. Nevertheless, Freeman would have to prevail on Zillow's motion to decertify the class and, if he wanted to proceed on his classwide meal and rest break claims, on Zillow's Rule 23(f) appeal. Accordingly, as Freeman observes, "there is a risk that Zillow would prove successful in attacking class certification." (Mem. at 19.)

**D. Amount Offered in Settlement**

While the final allotments may vary somewhat, Class Counsel estimate that the average settlement award will equal $5,980 and the median award will total $5,974. (Mem. at 9.) The largest estimated payment under the Settlement Agreement exceeds $32,000. (*Id.*) Class Counsel have estimated the maximum potential recovery for class members' overtime claims based on the number of class members, workweeks, assumed hours per week of unpaid overtime, and a multiplier to account for liquidated damages and interest. (Geragos Suppl. Decl. ¶¶ 7, 10.) To support their estimate, Class Counsel note that the Department of Labor has authorized the Claims Administrator to send class members a Form WH-58 along with their settlement checks. (*Id.* ¶ 8.) The agency provides this form to employees when an agreement provides "close to what it believes is 'full payment.'" 4 Emp. Coord. Compensation § 41:8 (2017). The maximum potential recovery on the meal and rest break claims was calculated based on an assumed one meal or rest break violation per week. (Geragos Suppl. Decl. ¶ 12.) Plaintiff's expert had previously estimated that Zillow employees forwent three meal or rest breaks per week, but Defendant's expert countered in his rebuttal report that 80.9% of Zillow employees swiped back into the office between 11:00 a.m. and 2:00 p.m., raising the inference that Zillow employees took their meal breaks roughly that fraction of each week. (*Id.*) Based on this evidence, Plaintiff's Counsel contend that assuming one meal or rest break violation per week is more accurate, particularly because Zillow employees could have taken meal or rest breaks without leaving the office or opted voluntarily to skip their breaks. (*Id.*) As for the California penalty claims, Plaintiff's expert calculated $511,000 in damages for the waiting time penalties, and Plaintiff's Counsel estimated the maximum

potential liability for the inaccurate wage statement claims based on an assumed $50 per initial pay period and $100 for each subsequent period during the one-year limitations period. (*Id.* ¶ 13.) Plaintiff's Counsel determined that they would not collect anything under the California Private Attorneys General Act because they did not comply with the statute's exhaustion requirement. (*Id.* ¶ 14.) The Court finds that Class Counsel's assumptions in calculating the maximum potential recovery for each claim are logical and supported by objective evidence.

Using their estimates of class members' maximum potential recovery, Class Counsel determined that class members' percentage of maximum potential recovery under the Settlement Agreement would range from nearly one hundred percent for the first and second overtime allocations to less than ten percent for the waiting time and wage statement claims. (*Id.* ¶ 5.) Overall, the Settlement Agreement represents approximately 43% of class members' maximum total potential recovery. (*Id.*) This percentage is comparable to, if not somewhat greater than, the percentage recovered in other wage-and-hour settlements. *See, e.g.*, *Khanna v. Intercon Sec. Sys.*, *Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *12 (E.D. Cal. Apr. 8, 2014) (approving a settlement that reflected a recovery of 35% on state overtime claims and 39% on FLSA claims); *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 623-24 (N.D. Cal. 2014) (finding a settlement amount equaling between 9% and 27% of the total potential liability to be fair, adequate and reasonable given the uncertainty of continued litigation); *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 456 (E.D. Cal. 2013) (approving a settlement agreement that amounted to approximately 30-57% of the maximum potential recovery); *Greko v. Diesel U.S.A., Inc.*, No. 10-CV-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (finding settlement amount that constituted 24% of estimated damages to be reasonable and beneficial to the class).

The distribution methodology for the net settlement fund also appears fair, adequate, and reasonable. Each class members' recovery under the settlement agreement

varies based on the length of their employment and the governing state law. (*Id.* § 5.1.1.) Thus, California class members' share of the net settlement fund will reflect the longer statute of limitations for their overtime claims and their separate meal and rest break, waiting time penalty, and inaccurate wage statement claims. *See In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

Finally, the Settlement Agreement's release, while undoubtedly broad, "appropriately track[s] the breadth of [Freeman's] allegations in the action[,] and the settlement does not release unrelated claims that class members may have against defendants." *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011); *see Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." (citation omitted)). Courts routinely reject releases in wage-and-hour agreements that, in form or effect, amount to a general release or a release of claims unrelated to the plaintiff's complaint. *See, e.g.*, *Ambrosino v. Home Depot U.S.A, Inc.*, No. 11CV1319 L MDD, 2014 WL 1671489, at *2 (S.D. Cal. Apr. 28, 2014) (rejecting a general release); *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012) ("[O]verly broad release provisions, which release a [d]efendant from all claims to settle their wage claims, including claims that are unrelated to the claims asserted in the complaint, are improper in FLSA and class action settlements."). This Settlement Agreement neither includes a general release nor requires class members to waive claims unrelated to the allegations at issue in this action. (*See* Stip. SA § 8.1.) And a broad release is understandable given the substantial monetary payout that class members will receive under the agreement. In addition, the potential

breadth of the release has been narrowed by making the list of claims, theories, and documents listed in section 8.1 exhaustive and by adjusting the release period for Washington class members to correspond to the period for their allocations. (*See id.*)

Thus, the amount offered in settlement favors granting preliminary approval to the Settlement Agreement.

**E. <u>Stage of the Proceedings and Extent of Discovery Completed</u>**

The stage of the proceedings and the extent of discovery are probative of whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Discovery can be both formal and informal. *See Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST (RZx), 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011). Before reaching this Settlement Agreement, the parties engaged in extensive formal discovery, including the disclosure of thousands of pages of records, the depositions of Freeman and senior Zillow employees, and the production of dueling expert reports. (Mem at 19-20, Geragos Suppl. Decl. ¶¶ 9, 12, 15; Geragos Second Suppl. Decl. ¶¶ 7, 14-15, Doc. 135.) After full briefing, the Court granted Freeman's hotly contested motion for class certification, and, soon thereafter, the parties engaged in settlement discussions through a mediator.

Given these facts, the Court concludes that the parties possess sufficient information to make an informed settlement decision. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but class counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services."). Accordingly, this factor weighs in favor of granting preliminary approval.

**F. Experience and Views of Counsel**

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted). Class Counsel, who have extensive experience serving in complex civil litigation, have endorsed the Settlement Agreement as fair, reasonable, and adequate. (Geragos Decl. ¶¶ 10-11, Doc. 122-2; Mem. at 20.) This factor, therefore, supports preliminary approval.

**G. The Presence of a Governmental Participant**

"The participation of a governmental entity 'serves to protect the interest of the class members.'" *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (quoting *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977)). DOL and Zillow have reached a separate agreement obligating Zillow to pay its Inside Sales Consultants the 6.29 hours of overtime due under the main FLSA allocation, which shall be doubled to reflect liquidated damages, in return for DOL authorizing the Claims Administrator to distribute copies of Form WH-58 along with the settlement checks. (Geragos Suppl. Decl. ¶ 7.) *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (explaining that DOL's response to settlement agreements differs based on their quality). The DOL's approval, at least in part, of this Settlement Agreement militates in favor of granting preliminary approval.

**H. Reaction of Class Members to Proposed Settlement**

Freeman has not provided evidence of class members' reactions to the proposed Settlement Agreement. (Mem. at 20.) The lack of such evidence, however, is not uncommon at the preliminary approval stage. Before the final fairness hearing, Class Counsel shall submit a sufficient number of declarations from class members discussing their reactions to the proposed Settlement Agreement. The Court is particularly interested in the reactions of class members who continued to work for Zillow after implementation of Workday. A small number of objections and opt outs may also suggest that class

members view the Settlement Agreement favorably. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043.

**I. <u>Signs of Collusion</u>**

This Settlement Agreement contains a clear-sailing provision that obligates Zillow not to object to a request for attorneys' fees of up to one third of the gross settlement fund ($2,000,000). (SA § 5.1.3.) Courts view these provisions with skepticism because they "increase[] the likelihood that class counsel will have bargained away something of value to the class." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 948 (citation omitted). But a clear-sailing provision is not fatal to approval of a class action settlement, especially when the agreement lacks a "kicker" provision that returns all unawarded attorneys' fees to the defendant. *See, e.g., In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("The absence of a 'kicker provision' in the parties' settlement and the fact that the class is receiving reasonable value reduces the likelihood that plaintiffs and [defendant] colluded to confer benefits on each other at the expense of class members."). Here, the Court will determine the final amount awarded in attorneys' fees or an incentive award and any unawarded sums will remain part of the net settlement fund. (SA §§ 2.21, 5.1, 5.1.3.) Another sign that the agreement is not the product of collusion is that parties negotiated the agreement with the assistance of an experienced magistrate judge.[2] (Geragos Decl. ¶ 10.) *See Satchell v. Fed. Express Corp.*, No. C 03-2879 SI, 2007 WL 1114010, at *4 (N.D. Cal.

---

[2] The Court also requested and reviewed a separate, confidential agreement referenced in section 13.3 of the Settlement Agreement that authorizes Zillow to terminate the Settlement Agreement if certain conditions, known as the "Opt-Out Conditions," are satisfied. (Request for Suppl. Agreement, Doc. 136; Suppl. Agreement, Doc. 137.) Having reviewed this agreement, the Court finds that it does not suggest overt or subtle collusion. Nevertheless, the Court questions whether the parties truly needed to include these conditions in a separate, confidential agreement, considering doing so needlessly raises concerns of collusion.

Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

Class Counsel's requested attorneys' fees award of one third of the common fund is well above this Circuit's twenty-five percent benchmark. (SA § 5.1.3.) Although the amount class members will receive under this agreement is favorable, the Court will "scrutinize closely the relationship between attorneys' fees and benefit to the class" in determining the final fee award and will not "award[] unreasonably high fees simply because they are uncontested." *In re Bluetooth*, 654 F.3d at 948 (citation omitted). To receive such a substantial upward adjustment from a benchmark award, Class Counsel must make a convincing showing under the factors identified by the Ninth Circuit. Similarly, the settlement provides that Freeman may apply for a service award of up to $15,000 (SA § 5.1.2)—well above the amount that this Court and others typically award in wage-and-hour class actions. In his request, Freeman must show why such a large service award is appropriate in light of his contributions to this class action and the amount other class members will receive under the agreement. Thus, while the agreement does not appear to be the product of collusion, any request for attorneys' fees or an incentive award must be well supported and the amount sought must be reasonable.

Considering all of the factors together, the Court preliminarily concludes that the Settlement Agreement is fair, reasonable, and adequate.

## IV. <u>APPROVAL OF THE PROPOSED CLAIMS ADMINISTRATOR</u>

The parties agreed to appoint Garden City Group, LLC as the Claims Administrator in this action. (*See* Mot. at 1.) Freeman has now provided sufficient documentation of Garden City Group's capabilities in carrying out the duties of a claims administrator. (*See* Kierkegaard Decl.) While the Court approves Garden City Group as the Claims Administrator, the Court does not approve any amount for administrative expenses at this time. Freeman shall apply for approval of an award of costs for claims administration concurrently with his application for attorneys' fees and a service award.

## V. PRELIMINARY APPROVAL OF CLASS NOTICE FORM AND METHOD

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). But actual notice is not required. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

Within ten days of preliminary approval, Zillow will provide the Claims Administrator with each class member's name, social security number, last known mailing address, and dates of employment. (SA § 6.1.) The Claims Administrator will verify class members' addresses using the National Change of Address Database. (*Id.* § 6.3.) Within ten days of receiving the class list, the Claims Administrator will mail the class notice via first-class mail. (*Id.* § 6.1.) If the notice packet is returned as undeliverable with a forwarding address, the notice shall be mailed immediately to that address. (*Id.*) If no forwarding address is provided, the Claims Administrator will use the class member's name, address, and social security number to attempt to find an alternative address for the class member through a "skip-trace." (*Id.*) Class Members who wish to object to, or exclude themselves from, the Settlement Agreement must file an objection or request for exclusion no later than thirty days after the Notice is first mailed. (*Id.* § 7.2.1.)

The Supreme Court has found notice by mail to be sufficient if the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *accord Sullivan v. Am. Express Publ'g Corp.*, No. SACV 09-142-JST ANx, 2011 WL 2600702, at *8 (C.D. Cal. June 30, 2011). The Court finds that the proposed procedure for class notice satisfies this standard, except that the objection and exclusion deadline must be extended to forty-five days from the first mailing of the class notice and, for those who will be re-mailed the notice packet due to an inaccurate address, no later than forty-five days from re-mailing the notice packet.

Freeman has provided the Court with a copy of the proposed notice. (Class Notice, Exh. 2, Doc. 135-6.) As required by Rule 23(c)(2)(B), the class notice includes in a manner that is understandable to potential class members:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The Court, however, requires the following modifications to the class notice:

- Because this is a hybrid action, the notice must explain clearly that class members retain the option of remaining in the class action but refusing to join the collective action. As noted in Part II.D of this Order, the Settlement Agreement cannot condition California class members' recovery for their state law meal and rest break, waiting time, inaccurate wage statement, and PAGA claims on opting into the FLSA collective action.
- Under Section 8, Subsection C ("Object"), the first sentence of the second paragraph must be revised to state, "To be considered by the Court, an objection must be in writing and mailed no later than <<45 days from mailing>> to the addresses for the Claims Administrator, Class Counsel, and Zillow's Counsel provided below:" A mailing address for the Claims Administrator must be provided along with the other mailing addresses. Any other reference to serving objections must likewise be eliminated. Class Counsel are responsible for filing, in connection with Freeman's motion for final approval, all objections along with a brief responding to the objections.

- Under Section 9 ("Are there more details available?"), the Class Notice should state that all papers filed in this action, including a copy of the application for fees and costs and a service award, will be available for review via the Courthouse and via the Public Access to Court Electronic Resources System (PACER), available online at http://www.pacer.gov.

Subject to the changes discussed above, the Court approves the form and method of class notice. The Court ORDERS the parties to file any revised version of the class notice **within 10 days** of this Order. The Court requires that any motion for attorneys' fees, costs, and service payments be filed with the Court **no later than 15 days before** the latest exclusion deadline. Freeman shall file his motion for final approval no later than **August 25, 2017**, including a brief responding to any submitted objections and otherwise summarizing class members' participation in the settlement and the settlement administration to date.

Finally, jurisdiction over this matter arises in part from the Class Action Fairness Act. (*See* Compl. ¶ 7, Doc. 1.) In their papers for final approval of the settlement, the parties must include a declaration reflecting that they provided appropriate notice of the proposed settlement to relevant state and federal authorities in accordance with 28 U.S.C. § 1715(b) at least 90 days prior to the date for the final fairness hearing. 28 U.S.C. § 1715(d). *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1059 n.5 (C.D. Cal. 2010) (recognizing that the Class Action Fairness Act "requires that notice [of a proposed settlement] be sent to 'the appropriate State official of each State in which a class member resides and the appropriate Federal official'" (quoting 28 U.S.C § 1715(b)).

**VI. <u>CONCLUSION</u>**

For the reasons discussed above, the Court (1) conditionally certifies the class for settlement purposes only; (2) conditionally certifies the collective action for purposes of settlement, provided that the parties amend the Settlement Agreement so that class members' recovery for their state law meal and rest break, waiting time, inaccurate wage

statement, and PAGA claims is not contingent on them opting into the FLSA collective action; (3) preliminarily approves the Settlement Agreement, subject to the aforementioned amendment; (4) names Ian Freeman as Class Representative; (5) names Mark J. Geragos and Bobby Samini as Class Counsel; (6) approves Garden City Group, LLC as Claims Administrator; and (7) approves the form and method of class notice, subject to the changes discussed above.

The Court ORDERS the parties to file **within 10 days** of this Order either a revised version of the class notice and Settlement Agreement or a joint status report indicating that the parties are unwilling to revise the Settlement Agreement and that this case should return to the Court's active calendar. The Court sets a final fairness hearing for **September 8, 2017 at 2:30 p.m.** to determine whether the settlement should be approved as fair, reasonable, and adequate to class members. Plaintiff shall file his motion for final approval no later than **August 25, 2017**. Class Counsel and Plaintiff shall file any brief in support of their application for attorneys' fees, costs, and an incentive award **no later than 15 days before** the latest exclusion deadline. The Court reserves the right to continue the date of the final fairness hearing without further notice to class members.

DATED: May 10, 2017



JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE